Filed 6/14/24  Balistreri v. Balistreri CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY A. NIVALA BALISTRERI, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SAL J. BALISTRERI,<br><br>    Defendant and Respondent. | A162222<br><br>(San Francisco City & County Super. Ct. No. PTR-20-303610) |

**OPINION ON TRANSFER[1]**

Mary A. Nivala Balistreri filed a petition in probate court alleging that, the day before her husband, Sal C. Balistreri (decedent), died, the two amended their revocable trust.  The probate court subsequently deemed the alleged amendment "null and void" and denied her petition to construe the trust and confirm the validity of the amendment.  The court concluded the claimed amendment was invalid under section 15402 because the trust

---

[1] We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)  Undesignated statutory references are to the Probate Code. We use family members' first names for convenience, intending no disrespect, and we recite only those facts necessary to resolve the issues on appeal.

1

mandated that any amendment "shall be made by written instrument signed, with signature acknowledged by a notary public," and the amendment was not so acknowledged. We affirmed. (*Balistreri v. Balistreri* (2022) 75 Cal.App.5th 511, review granted May 11, 2022, S273909.) The California Supreme Court granted review, then transferred the matter to us to vacate our decision and reconsider the cause in light of *Haggerty v. Thornton* (2024) 15 Cal.5th 729 (*Haggerty*). We vacate our decision and, having reviewed *Haggerty*, reverse and remand.

Mary and the decedent were married and had a daughter, Julia. The decedent also had children from prior marriages, including Sal and Christina. In September 2017, Mary and the decedent created the Balistreri Family Trust (Trust). They named themselves trustors and trustees, and they placed community property located on 23rd Street in San Francisco (the property) in the Trust. Section 7.2.1 of the Trust provides that upon the decedent's death, the property "shall be distributed equally among" Julia, Sal, and Christina. In turn, section 5.2.4 provides that "[a]ny amendment, revocation, or termination . . . shall be made by written instrument signed, with signature acknowledged by a notary public, by the trustor(s) making the revocation, amendment, or termination, and delivered to the trustee."

Mary alleged that in February 2020, the decedent executed an amendment in his capacity as trustor. As relevant here, the amendment sought to strike section 7.2.1 and stated the property "shall remain in the trust." She and the decedent signed the amendment and "[a]ccepted and adopted" it as cotrustees. The amendment is not notarized. The decedent died the next day. Mary thereafter petitioned to construe the Trust and for an order confirming the validity of the amendment. She acknowledged the Trust imposed a notary requirement but argued the amendment was effective

2

notwithstanding the "lack of notarization" because section 5.2.4 did not delineate an exclusive amendment procedure. Thus — according to Mary — the Trust could be amended using the revocation procedure described in section 15401, subdivision (a)(2).

Sal responded to Mary's petition and filed a petition of his own, to invalidate the amendment. He argued the amendment was void as it was not executed by the "[d]ecedent in the manner and form required" by the Trust and section 15402. Sal also maintained the amendment was void for the additional reason that the decedent was delusional in the days preceding his death, and that Mary exerted undue influence on the decedent with the intent to undermine his "testamentary wishes as delineated" in the Trust. Mary objected to Sal's petition.

At the parties' request, the probate court decided the validity of the amendment before reaching other issues in their petitions. Relying on section 15402 and then-existing case law interpreting that statute, the court concluded the amendment was "null and void" because the decedent's "signature was not acknowledged by a notary public as required under [s]ection 5.2.4" of the Trust.[2] The court denied Mary's petition to construe the Trust and to confirm the validity of the amendment. We affirmed.[3]

---

[2] In invalidating the amendment, the probate court relied on *King v. Lynch* (2012) 204 Cal.App.4th 1186. Sal and we did too. The California Supreme Court has now disapproved *King*. (*Haggerty, supra,* 15 Cal.5th at p. 742.)

[3] The majority concluded the settlors were bound by the method of amendment specified in section 5.2.4 regardless of whether it was "exclusive or permissive." (*Balistreri v. Balistreri, supra,* 75 Cal.App.5th at p. 514, review granted.) The concurring opinion concluded the specified method was exclusive and found it unnecessary to go any further. (*Id.* at p. 523 (conc. opn. of Tucker, P. J.).)

The Probate Code governs revocation and modification of a trust. Section 15401, subdivision (a) sets out two alternative methods for revocation: a trust may be revoked by "compliance with any method of revocation provided in the trust instrument" (§ 15401, subd. (a)(1)); alternatively, revocation can occur by "a writing, other than a will, signed by the settlor . . . and delivered to the trustee during the lifetime of the settlor" *unless* "the trust instrument *explicitly* makes the method of revocation provided in the trust instrument the *exclusive* method of revocation" (*id.*, subd. (a)(2), italics added).

Under section 15402, "[u]nless the trust instrument provides otherwise . . . the settlor may modify [it] by the procedure for revocation." (*Haggerty*, *supra*, 15 Cal.5th at p. 733.) So, if a trust is silent as to modification, it "may be modified in the same manner in which it could be revoked." (*Ibid.*) But what "if the trust instrument specifies a method for modification"? (*Ibid.*) *Haggerty* considered this question and held "that under section 15402, a trust may be modified via the section 15401 procedures for revocation, including the statutory method, unless the trust instrument provides a method of modification and *explicitly makes it exclusive, or otherwise expressly precludes the use of revocation procedures for modification.*" (*Ibid.*, italics added.) *Haggerty* explained "a trust instrument that merely specifies a method of modification without limiting settlors to the use of that method does not preclude the use of the revocation procedures and therefore does not 'provide[] otherwise' from the general rule." (*Id.* at p. 736.)

In light of *Haggerty*, we conclude section 5.2.4 of the Trust does not explicitly make its specified method of modification exclusive, nor does it expressly preclude the use of revocation procedures for modification. It provides "[a]ny amendment, revocation, or termination . . . shall be made by

4

written instrument signed, with signature acknowledged by a notary public, by the trustor(s) making the revocation, amendment, or termination, and delivered to the trustee." Use of the word "shall" is insufficient to meet the standard established by *Haggerty*. In his supplemental brief, Sal takes the position that the phrase " 'may only' " — language identified in *Haggerty*, *supra*, 15 Cal.5th at page 740 as sufficiently precluding "modification via any different method of revocation" — is like "shall" in section 5.2.4. We are unpersuaded. While courts ordinarily "construe the word . . . 'shall' as mandatory," there may be indications that use of the word is suggestive, rather than "dispositive or conclusive." (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542; *Kropp v. Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1043–1044 [concluding "may" in the trust at issue was mandatory rather than permissive].) Moreover, *Haggerty* noted that the California Law Commission, which recommended enactment of section 15402, "proposed to make the statutory method more readily available for modification and revocation." (*Haggerty*, at p. 739.) Reviewing section 5.2.4, we cannot conclude "shall" explicitly makes the specified method of amendment exclusive or expressly precludes the use of the revocation procedures.

We are likewise unconvinced by Sal's assertion that *Haggerty* "did not decide whether exclusivity . . . must be explicitly stated or can be implied." *Haggerty* held "that under section 15402, a trust may be modified via the section 15401 procedures for revocation, including the statutory method, unless the trust instrument provides a method of modification and *explicitly* makes it exclusive, or otherwise *expressly* precludes the use of revocation procedures for modification." (*Haggerty*, *supra*, 15 Cal.5th at p. 733, italics added.) As explained, section 5.2.4 does neither.

Accordingly, we reverse the probate court's orders dated January 8 and February 9, 2021.  But as previously noted, at the parties' request, the court decided the validity of the amendment before reaching other issues in the parties' petitions.  We therefore remand the matter for the court to address any remaining issues in the parties' petitions.

## DISPOSITION

Our prior opinion is vacated.  The orders dated January 8 and February 9, 2021 are reversed, and the matter is remanded to the probate court for consideration of the remaining issues.  Mary is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.


A162222